THE PEOPLE *ex rel.* DOUGHTY v. THE JUDGES OF DUTCHESS C. P., decided and reported in the Supreme Court. 20 Wend. 658. December, special term, 1839, Albany.

By the return to the alternative writ of mandamus in this case, it appeared that one Griffin, had recovered a judgment against Doughty, the relator, before a justice of the peace, on the *twelfth* day of March, 1839, from which D. appealed to the C. P. When the cause came on for trial in the C. P., Griffin objected that the court had no jurisdiction, the *affidavit and appeal bond* reciting the judgment as rendered on the 11th of March, whereas the return of the justice was of a judgment rendered on the 12th day of that month. In all other respects, the affidavit and bond were in due form. The relator thereupon offered to prove that only one cause had been tried before the justice between the parties, and offered to amend the bond. But the court refused the amendment, "for the reason that the bond was neither informal nor imperfect, but was a bond to remove a different judgment from the one returned by the justice, and also for the reason that the affidavit upon which the appeal was allowed, also mentioned a judgment different from that returned by the justice, and which affidavit the C. P. could not amend." Whereupon the court refused to proceed to the trial of the

cause; and although no notice of a motion for that purpose had been given, *quashed the appeal.* The alternative mandamus required the judges of the C. P. to vacate the rule quashing the appeal, and to deny the motion to quash the appeal, or show cause, &c.

"By the court, Bronson, J., "Although the bond was perfect in point of form, there was a variance of a day in reciting the judgment. The recital of the day on which the judgment was rendered, was wholly unnecessary; 2 R. S. 259, § 189, and the variance was such an imperfection, as the court might have, in its discretion, allowed to be amended. § 204. There is also another statute fully warranting the amendment; 2 R. S. 556, § 33, 34, and the court of C. P. *erred in ordering the appeal to be quashed.*"

"This presents an important question in relation to the appropriate office of the writ of mandamus. The court of Common Pleas, acting *within the scope of its jurisdiction,* has heard and decided a matter properly brought before it for adjudication; and the question is, whether we can by mandamus, require that court to undo what it has done, on the ground that the decision was erroneous. I am of opinion that we possess no such power. I shall not stop to enquire whether the order quashing the appeal was such a final judgment upon the rights of the parties as may be reviewed by writ of error, nor whether the relator has any other remedy. 3 Binney, 273."

In the case cited here, the Supreme Court of Pennsylvania held that "a mandamus would not be granted, where the Common Pleas had dismissed an appeal contrary to the statute authorizing it, but that a writ of error would lie." Tilghman, Ch. J., says, and the court concurred;—"The striking off the appeal, is certainly in the nature of a judgment. It is the act of the court dismissing the appeal, and thus making an end of the cause. It is substantially in the nature of a judgment." 3 Binney, 275–6.

Mr. Justice Bronson continues: "I place my opinion on the *broad ground* that the writ of mandamus can not be awarded for the *correction of judicial errors.*" Such errors, if corrected at all, must be reached by some other process than the writ of mandamus."

Mr. Justice Bronson has not thought proper to inform us by what other process, nor worth his while to define by any line of demarcation whatever, the boundaries of this *broad ground*, on which he places his opinion. The expression *"judicial errors,"* to which he no doubt attached a limited meaning, is used by him without reservation, qualification or exception. Now, if he meant to say that no act, order or even *judgment* in its strictest sense, of an inferior court or magistrate acting judicially can or ought to be corrected by mandamus, we humbly apprehend this *broad ground,* can not be sustained. But of this we propose to treat somewhat at large hereafter.

Mr. Justice Bronson then records the following *peccavimus,* on behalf of himself and his learned brethren of the Supreme Court:

"It is not to be denied that there had been a gradual departure, in this state, from the old law on this subject, until this court had, in one instance at least, exercised a jurisdiction by mandamus as large as that which we now decline. But we stand corrected by the decision of the court of last resort in the case of *The Judges of Oneida* v. *The People,* 18 Wend. 79. As *we* understand that decision, taken in connection with the resolution adopted by the court, we have no jurisdiction *by mandamus,* to review the decision of a subordinate court in a matter of which it had *judicial cognizance.*"

"Of this doctrine we do not complain. On the contrary, I will mention by way of confirmation, a few authorities in addition to those cited by Mr. Senator Tracy in his opinion."

He then cites *Chase* v. *Blackstone Canal Co.,* 10 Pick. 244, which was like that of *The Oneida C. P. Judges,* a case where a mandamus ought not to issue. It was on the contrary, as urged by the counsel for the defendants, " a clear case for a *certiorari,*" if any thing. Besides which, the judgment of the County Commissioners in regard to the relator's *costs,* which formed the point in controversy, was apparently correct. He cites also, the case of *United States* v. *Lawrence,* 3 Dall. 42, where the Supreme Court of the United States held, that they could not interpose by manda-

mus to compel a district judge to issue a warrant for apprehending a Captain Barre, as a deserter from his own ship, he having, on application to him for such warrant, already adjudged that the evidence was not the kind of proof designated by the treaty which gave him jurisdiction. 3 Dall. 44. And certainly in such a case, no judicial power could, or ever did attempt by *mandamus,* to make a judge who had full jurisdiction, " decide according to the dictates of any other judgment but his own," as the court there very pointedly expressed it.

Mr. Justice Bronson cites, also, from the case of *Strong, Petitioner, &c.,* 20 Pick. R. 484, in aid of Senator Tracy, some general remarks of Morton, J., upon the proper office of a writ of mandamus. We find nothing to criticise in them, and nothing that has the slightest affinity to this question of jurisdiction over the proceedings of inferior courts in particular instances. He expressly says—" It cannot be maintained that the decision of the examiners, (of county votes for county officers,) was an act within their *legal* discretion. Whether their determination, as to the reception or rejection of returns, would be deemed a judicial decision may well be doubted. But nothing can be clearer than that the counting the votes, and ascertaining the majorities, and giving certificates of the result, are mere ministerial acts ;" p. 497. Now nothing could have been further from Judge Morton's idea, in his *general remarks* upon the office of a mandamus, than to enquire and define where and when the writ might or might not issue, to control the action of inferior courts or magistrates. The cases of *Ex parte Hoyt,* 13 Pet. 279, and *Ex parte Whitney,* 13 ibid. 404, were cases precisely like that of *U. S.* v. *Lawrence,* in principle, and correctly decided in the same manner.

But the authority on which Mr. Justice Bronson seems mainly to rely, is the case of *The King* v. *The Justices of Monmouthshire,* 7 Dow. & Ryl. 334, which he says indeed " is much like the case at bar." There, the Court of Sessions had, upon hearing *on the merits,* upon the question of *fact* of the residence of a pauper, quashed an appeal ; and a motion for a mandamus to compel them to hear and determine the appeal anew, was denied by the Court of King's Bench

—p. 334. Now how that case can be said to be "much like the case at the bar," where the learned judge himself proves that the Common Pleas had *wrongfully dismissed* an appeal without *hearing it at all*, it passes one poor understanding to give a tolerable guess. The case in Dow. & Ry. certainly was exactly like the case at bar in one respect; to wit: that there was *in both*, an application for a mandamus to an inferior tribunal. But as to the *merits* of the two applications, it is about the same similitude, in reality, as that of the brave Welsh Captain, Fluellen, in Henry V., in comparing his king, Henry V., born in Monmouth, to Alexander the Great, born in Macedon: "There is a river in Macedon; and there is moreover a river at Monmouth; and there is salmons in both."

In this case of *The King* v. *The Justices of Monmouthshire*, the mandamus was applied for to the Sessions "to cause continuances to be entered, and at their *next sessions* to hear *and determine the merits of the said appeal*," and the case was this. The appeal had been heard *upon the merits*, and the sessions being *equally divided*, they then directed the appeal to be *quashed*, without any *division*, and without any dissent being expressed"—p. 334, 5. The application was resisted upon the idea that the King's Bench had no authority to compel the sessions, who had decided on the merits, to *review their decision*. So say the counsel who showed cause; and such is the language of Abbott, Ch. J., with which Bailey and Holroyd, Js., concurred. Abbott, Ch. J., says—"I am of opinion that the rule *nisi* for a mandamus must be discharged. In this case the justices at the Quarter Sessions *have actually given judgment upon the appeal*. We are not a Court of Error to *review their decision*." "*In form*, this is an application to enter continuances, and hear and determine the appeal; but it is *in substance*, an application to *expunge the proceedings*, which the justices have already taken." This was the true and conclusive objection to the application. But the language of Ch. J. Abbott gives us full right to claim that if the application had been in *substance* what it was in *form*, viz: to compel the sessions to *receive* an appeal, which they had refused to receive, that it would then have been within the

appropriate sphere of the writ of mandamus. For, in the case of *The King* v. *The Justices of Somersetshire*, in the same term, 7 Dowl. & Ryl. 385, we find the following record, most pregnant with instruction on this point, to which we respectfully invite Mr. Justice Bronson's special attention, when next this question, in the shape in which it was presented to him "in the case at bar," shall happen to come again before him for judicial determination. The case is thus stated: